**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DOREEN BROWDY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LILY'S SWEETS, LLC,<br><br>Defendant. | Case No.:<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Doreen Browdy ("Plaintiff") brings this action individually and on behalf of all others similarly situated against Lily's Sweets, LLC ("Defendant") based on personal knowledge as to Plaintiff, the investigation of Plaintiff's counsel, and on information and belief as to all other matters.

## NATURE OF ACTION

1. This is a putative class action lawsuit on behalf of purchasers of LILY'S brand gummy candies sweetened with allulose, including LILY'S Sour Gummy Worms, LILY'S Gummy Bears, LILY'S Peach Rings, and LILY'S Sour Watermelon Slices (the "Products"),[1] as shown below:

[1] The Products include all LILY'S gummy candies that contain allulose and bear the Sugar Representation, in all sizes and package formats, including, but not limited to, LILY'S Sour Gummy Worms (Tart 'N Tasty Fruit Flavors), LILY'S Gummy Bears (Sweet Fruity Friends), LILY'S Peach Rings (Oh So Sweet & Tangy), and LILY'S Sour Watermelon Slices (Tart Slices of Sweetness). Other than varying flavors and shapes, the Products are substantially identical in their labeling, formulation, sizing, and advertising, and each bears the Sugar Representation on its front label in substantially the same size, placement, and manner.




2. Defendant manufactures, markets, and/or sells the Products through thousands of brick-and-mortar and online retailers throughout the United States, including in the State of Illinois.

3. Defendant prominently advertises, markets, and sells the Products as candy that contains "<1g SUGAR" and "NO SUGAR ADDED" (together, the "Sugar Representation"). The Sugar Representation promises that each bag of the Products contains less than one gram of sugar in total and that no sugar has been added to the Products.

4. Defendant intentionally misleads consumers into believing that the Products contain virtually no sugar. It does this because consumers want sweets with little or no sugar, which they believe are healthier and will help them manage their weight and blood sugar and reduce their overall sugar and calorie intake. Defendant markets the Products specifically to that audience, promoting them as "better-for-you" treats with "less than one gram of total sugar"[2] and describing the Gummy Bears as "Keto-friendly."[3]

5. However, unbeknownst to consumers, each bag of the Products is sweetened with a large quantity of the sugar allulose during manufacturing – 11 or 12 grams per bag according to the Products' labeling. Allulose is the second ingredient in every Product, behind only soluble corn fiber. The Products therefore contain at least eleven times the sugar the Sugar Representation promises.

6. Defendant has thus engaged in widespread false and deceptive conduct by designing, marketing, manufacturing, distributing, and/or selling the Products with the Sugar Representation. Every package of the Products misleads consumers into believing that each Product contains less than one gram of sugar and no added sugar.

7. Plaintiff and Class Members purchased the Products, which are designed, marketed, manufactured, distributed, and/or sold by Defendant. Plaintiff and Class Members relied to their detriment on Defendant's Sugar Representation, when the Products in fact contain many grams of the sugar allulose. Plaintiff and Class Members would not have purchased the Products—

---

[2] The Hershey Company, *No Sugar Added, No Problem! Lily's Sweets Introduces New Gummies Nationwide Just in Time for Summer* (May 23, 2022), https://hershey.gcs-web.com/news-releases/news-release-details/no-sugar-added-no-problem-lilys-sweets-introduces-new-gummies (last visited Oct. 5, 2026).

[3] LILY'S, *LILY'S Gummy Bears, 1.8 oz bag*, https://www.lilys.com/products/lilys-gummy-bears-1-8-oz-bag.html (last visited Oct. 5, 2026).

or would not have paid as much as they did to purchase them—had they known the Sugar Representation was false. Plaintiff and Class Members thus suffered monetary damages as a result of Defendant's deceptive and false representation.

8. Plaintiff brings this action individually, and on behalf of similarly situated individuals who purchased the falsely and deceptively labeled Products, for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA"), fraud, and unjust enrichment.

## PARTIES

9. Plaintiff Doreen Browdy is a citizen and resident of East Dundee, Illinois, who has an intent to remain there, and is therefore a domiciliary of Illinois. Plaintiff purchased the Products multiple times from retail stores in Illinois. Most recently, on or about June 2026, Plaintiff purchased LILY'S Sour Gummy Worms and Gummy Bears from a retail store in or near Algonquin, Illinois, for approximately $3.00. Prior to her purchase, Plaintiff reviewed the Product's labeling and packaging and saw that it was labeled and marketed as containing "<1g SUGAR" and "NO SUGAR ADDED." Based on the Sugar Representation, Plaintiff believed the Product contained less than one gram of sugar and that no sugar had been added to it. Plaintiff relied on Defendant's Sugar Representation in deciding to purchase the Product. Accordingly, the Sugar Representation was part of the basis of the bargain, in that Plaintiff would not have purchased the Product on the same terms had Plaintiff known the Sugar Representation was not true. Plaintiff paid more for the Product, and would only have been willing to pay less, or unwilling to purchase it at all, absent the false and misleading labeling complained of herein. In making the purchase, Plaintiff paid a price premium for a product that claimed to contain less than one gram of sugar and no added sugar.

10. Defendant Lily's Sweets, LLC is a Delaware limited liability company with its principal place of business, on information and belief, in Boulder, Colorado. Defendant owns and operates the LILY'S brand and formulates, manufactures, labels, markets, distributes, and/or sells the Products nationwide under the LILY'S brand, including in this District.

## **JURISDICTION AND VENUE**

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act, because the matter in controversy exceeds $5,000,000 exclusive of interest and costs, there are more than 100 members of the proposed classes, and at least one member of the proposed classes is a citizen of a State different from Defendant.

12. Defendant is an "unincorporated association" that "shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized," 28 U.S.C. § 1332(d)(10). Defendant is therefore a citizen of Delaware and Colorado. Plaintiff is a citizen of Illinois. Minimal diversity is therefore satisfied. And because Defendant is not a citizen of Illinois, the exceptions set forth in 28 U.S.C. § 1332(d)(3) and (d)(4) do not apply.

13. This Court has personal jurisdiction over Defendant because Defendant purposefully directs the marketing, distribution, and sale of the Products into Illinois, including to retailers in this District; because Defendant transacts business and contract to supply goods in Illinois; and because Plaintiff's claims arise out of Plaintiff's purchase in Illinois of a Product that Defendant labeled, marketed, and sold here.

14. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff resides in this District and purchased the Product in this District, and Defendant distributes, markets, and sells the Products in this District.

## FACTUAL ALLEGATIONS

### A. Sugar Reduction Claims

15. Sugar is considered a contributor or cause of many different medical conditions, including weight gain, obesity, diabetes, cavities, and other diseases in adults.

16. A growing trend toward living healthier lives has led consumers to invest in their health by choosing foods and snacks that contain less, or no, sugar.

17. In particular, consumers on low-carbohydrate diets, like the ketogenic diet, and consumers seeking to manage their blood sugar look for low-sugar and no-sugar-added claims, such as a small, stated number of grams of sugar per serving. Defendant targets these consumers directly: Defendant describes the Gummy Bears as "Keto-friendly," touts on the back of each package that the Products contain only one or two grams of "NET CARBS," and promotes the Products as "better-for-you" treats "without the grown-up guilt."[4]

18. In response to this consumer demand, food manufacturers—including Defendant—increasingly place sugar-content claims on the front of their packaging, including "sugar free," "no added sugar," "low sugar," and statements that a product contains less than one gram of sugar. Indeed, Defendant has built the LILY'S brand around sugar reduction, marketing LILY'S as "no sugar added chocolates and treats."[5]

19. As a result, consumers seek out, and are willing to pay more for, products that contain little or no sugar.

---

[4] *See supra* notes 2–3.

[5] LILY'S, *FAQs*, https://www.lilys.com/faqs.html (last visited Oct. 5, 2026).

**B. <u>Defendant's Sugar Representation Is False and Misleading</u>**

20. Defendant prominently and unambiguously represents on the front label of every Product that it contains "<1g SUGAR" and that it has "NO SUGAR ADDED." The Sugar Representation appears in two leaf-shaped badges on the principal display panel, beside an enlarged image of the candy:




21. Consumers reasonably believe that each bag of the Products contains less than one gram of sugar in total and that no sugar was added to the Products.

22. However, the Products all contain the sugar allulose, which Defendant adds as a standalone ingredient during manufacturing and lists as the second ingredient on each Product's ingredient statement. Allulose, also known as D-allulose or D-psicose, is a monosaccharide that is structurally similar to fructose. As the Seventh Circuit recently held, allulose is a sugar under 21 C.F.R. § 101.9(c)(6)(ii). *Franco v. Chobani, LLC*, 184 F.4th 599, 604 (7th Cir. 2026) ("There's no dispute that allulose is a monosaccharide. Because the definition includes every monosaccharide and the following parenthetical is merely a list of examples, allulose is a sugar under §

101.9(c)(6)(ii).”). Because allulose tastes like conventional sugar but contributes fewer calories, it is often used in place of table sugar as a bulk sweetener.

23. The U.S. Food and Drug Administration (“FDA”) agrees. FDA’s regulations provide that “[t]otal sugars shall be defined as the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose).” 21 C.F.R. § 101.9(c)(6)(ii). When FDA adopted that definition, it stated that, pending any future rulemaking, allulose, as a monosaccharide, must be included in the declaration of sugars. 81 Fed. Reg. 33,742, 33,795–96 (May 27, 2016). FDA has never conducted that rulemaking, “which means its original definition of sugar remains in force.” *Franco*, 184 F.4th at 606. And in *Franco*, the United States filed an amicus brief at the Seventh Circuit’s invitation setting out FDA’s position that the regulatory definition of total sugars is unambiguous and includes allulose. *Id.* at 604; Br. for the United States as Amicus Curiae at 11–12, *Franco*, No. 25-2087 (7th Cir. June 29, 2026), Dkt. No. 44.

24. FDA’s 2020 guidance stating that it would exercise enforcement discretion as to the declaration of allulose in the Nutrition Facts panel does not change the analysis. As the Seventh Circuit held, that guidance is not an interpretation of the regulatory definition of sugars but merely “an announcement of a change in enforcement policy,” and a manufacturer should know that FDA’s enforcement priorities do not immunize it from suits under state law. *Franco*, 184 F.4th at 606.

25. Defendant’s own labeling confirms that each of the Products contains many grams of allulose. The Products’ labels are substantially similar in all material respects: every Product bears the Sugar Representation on its front label, lists allulose as the second ingredient, and discloses on its back panel the amount of allulose in each bag, in a net-carbohydrate statement that subtracts allulose from total carbohydrates, as shown below.

26. The label of the Sour Gummy Worms represents on its front panel that each 1.8-ounce (51-gram) bag contains “<1g SUGAR” and has “NO SUGAR ADDED.” The ingredient statement lists allulose as the second ingredient, and the label discloses that each bag contains 11 grams of allulose (“42g Total Carbohydrate – 25g Fiber – 4g Erythritol – 11g Allulose = 2g Net Carbs per serving”):










27. The label of the Gummy Bears represents on its front panel that each 1.8-ounce (51-gram) bag contains “<1g SUGAR” and has “NO SUGAR ADDED.” The ingredient statement lists allulose as the second ingredient, and the label discloses that each bag contains 12 grams of

allulose (“41g Total Carbohydrate – 27g Fiber – 0g Sugar Alcohols – 12g Allulose = 2g Net Carbs”):










28. The label of the Peach Rings represents on its front panel that each 1.8-ounce (51-gram) bag contains “<1g SUGAR” and has “NO SUGAR ADDED.” The ingredient statement lists

allulose as the second ingredient, and the label discloses that each bag contains 11 grams of allulose ("42g Total Carbohydrate – 25g Fiber – 5g Sugar Alcohols – 11g Allulose = 1g Net Carbs"):










29. The label of the Sour Watermelon Slices represents on its front panel that each 1.8-ounce (51-gram) bag contains "<1g SUGAR" and has "NO SUGAR ADDED." The ingredient statement lists allulose as the second ingredient, and the label discloses that each bag contains 11

grams of allulose ("42g Total Carbohydrate – 25g Fiber – 4g Sugar Alcohols – 11g Allulose = 2g Net Carbs"):










30. The table below summarizes the Sugar Representation and allulose content of each Product. Counting the allulose in each Product as sugar yields the following minimum sugar content per bag:[6]

[6] FDA permits a manufacturer to declare total sugars as "less than 1 gram" when a serving contains less than one gram of sugars. 21 C.F.R. § 101.9(c)(6)(ii). The figures in the table below therefore conservatively assume that the Products contain no sugar other than the allulose Defendant discloses.

| **Product** | **Sugar Representation** | **Allulose per Bag** | **Minimum Total Sugars per Bag** |
|---|---|---|---|
| Sour Gummy Worms | "<1g SUGAR"; "NO SUGAR ADDED" | 11g | 11g |
| Gummy Bears | "<1g SUGAR"; "NO SUGAR ADDED" | 12g | 12g |
| Peach Rings | "<1g SUGAR"; "NO SUGAR ADDED" | 11g | 11g |
| Sour Watermelon Slices | "<1g SUGAR"; "NO SUGAR ADDED" | 11g | 11g |

31. The Sugar Representation consists of expressed nutrient content claims—direct statements about the level of sugar in the Products. 21 C.F.R. § 101.13(b)(1). A nutrient content claim may not be made on a food's label unless it is made in accordance with FDA's nutrient content claim regulations. *Id.* § 101.13(b). FDA permits a "no sugar added" claim only if, among other things, "[n]o amount of sugars, as defined in § 101.9(c)(6)(ii), or any other ingredient that contains sugars that functionally substitute for added sugars is added during processing or packaging." *Id.* § 101.60(c)(2)(i). Because allulose is a sugar as defined in § 101.9(c)(6)(ii), *Franco*, 184 F.4th at 604, and Defendant adds it to every Product during processing, the "NO SUGAR ADDED" claim is unauthorized and false. The "<1g SUGAR" claim, in turn, is a statement of the amount of a nutrient, which is permitted only if "it is not false or misleading in any respect." *Id.* § 101.13(i)(3). To the extent the "<1g SUGAR" claim implicitly characterizes the Products as low in sugar, it is independently unauthorized, because FDA has defined no "low sugar" claim, *see id.* § 101.60(c), and the Products' labels bear no disclaimer that the Products are not low in sugar, *see id.* § 101.13(i)(1)–(2). Compliance with these requirements is determined using "the analytical methodology prescribed for determining compliance with nutrition labeling in § 101.9," *id.* § 101.13(o)—under which allulose is a sugar. Because each Product contains at

least eleven grams of added sugar, the Sugar Representation is false and misleading, and the Products are misbranded. *See* 21 U.S.C. § 343(a)(1), (r)(1)(A); 410 ILCS 620/11(a).

32. Plaintiff does not seek to enforce the Federal Food, Drug, and Cosmetic Act. Plaintiff's claims arise under Illinois law and seek to impose no requirements beyond those federal law already imposes. *See* 21 U.S.C. § 343-1(a)(5); *Franco*, 184 F.4th at 606.

33. Accordingly, because the Products contain the sugar allulose in amounts far exceeding the less than one gram represented, and because that allulose is added during manufacturing, the Sugar Representation is false and misleading.

34. Defendant's conduct thus deceived and/or was likely to deceive the public.

35. Plaintiff and Class Members were deceived into believing that the Products contained less than one gram of sugar per bag and no added sugar, when in fact each bag contains at least eleven grams of added allulose, as shown above.

36. Plaintiff and Class Members would not know the true nature of the Products by looking at the front labels of the Products. There is nothing on the front label (like an asterisk) disclaiming or modifying the Sugar Representation. To the contrary, the front label reinforces the Sugar Representation with a badge stating that the Products are "MADE WITH STEVIA," which highlights one non-sugar sweetener while saying nothing about allulose. The Sugar Representation is not ambiguous or vague to reasonable consumers such that they would reasonably think or be expected to investigate the Sugar Representation further before purchasing the Products.

37. Moreover, the back panel does not preclude consumer deception. As the Seventh Circuit has held, "an accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020). "Many reasonable consumers do not instinctively parse

every front label or read every back label before placing groceries in their carts." *Id.* And here, the front label is not ambiguous at all: it promises less than one gram of sugar and no added sugar.

38. In any event, the back panel does not correct the Sugar Representation—it repeats it. The back panel of each Product again lists "<1g SUGAR" and "NO SUGAR ADDED," and the Nutrition Facts panel declares "Total Sugars <1g" and "Includes 0g Added Sugars." The back panel even directs consumers to "SEE NUTRITION INFORMATION FOR CALORIE AND SUGAR CONTENT"—information that itself omits the Products' allulose content. The only place the Products disclose the quantity of allulose is a small, angled statement printed over the packaging artwork that subtracts allulose from total carbohydrates alongside fiber and sugar alcohols to calculate "Net Carbs," reinforcing the impression that allulose is something other than sugar.

39. Further, since average consumers do not know what allulose is (*i.e.*, that it is a sugar), reading the ingredient list is insufficient to inform them that the Products contain much more sugar than promised by the Sugar Representation.

40. Plaintiff and Class Members purchased the Products in reliance on the Sugar Representation, reasonably believing that each bag contained less than one gram of sugar and no added sugar.

41. Plaintiff's and Class Members' reasonable belief that the Products contained less than one gram of sugar and no added sugar was a significant factor in their decisions to purchase the Products.

42. Plaintiff and Class Members did not know, and had no reason to know, that the Products contained many grams of added sugar because of how the Products are deceptively labeled and advertised to create the impression that they contain almost no sugar. Nothing on the

front packaging of the Products indicates that the Products contain more than one gram of sugar or any added sugar.

43. Defendant knew that Plaintiff and Class Members would rely on the Sugar Representation and would therefore reasonably believe that the Products contained less than one gram of sugar and no added sugar. Further, as the formulator and manufacturer of the Products, Defendant knows that allulose is a sugar and knows how much allulose it adds to each bag. Indeed, Defendant tells consumers on the LILY'S website that "Allulose is a monosaccharide, a simple sugar, so it tastes sweet," and that allulose "tastes sweet and functions like sugar in foods such as baked goods, ice cream, and candy."[7] The same webpage asserts that, "[a]ccording to the FDA, allulose does not need to be listed under total sugars or added sugars"—a reference to FDA's statement of enforcement discretion, which, as explained above, does not alter the regulatory definition of sugars and does not authorize a manufacturer to affirmatively represent that a product sweetened with many grams of allulose contains less than one gram of sugar and no added sugar. Accordingly, Defendant knew that the Sugar Representation was false and misleading when it made it, as allulose was added intentionally. Defendant intentionally and knowingly induced consumers to purchase the Products based on the Sugar Representation.

44. Because the Products contain allulose in amounts contrary to the Sugar Representation, Defendant's uniform practice regarding the marketing and sale of the Products was and continues to be misleading and deceptive.

45. Each Class Member has been exposed to the same or substantially similar deceptive practices, as the Products are uniformly marketed with the Sugar Representation even though each Product contains many grams of the sugar allulose.

[7] LILY'S, *FAQs*, *supra* note 5.

46. Consumers are willing to pay a price premium for products that contain little or no sugar, and Defendant charges a premium for the Products because of the Sugar Representation.

47. Consumers are also induced to make purchases that they otherwise would not have, but for the belief that the Products contained less than one gram of sugar and no added sugar. Plaintiff and Class Members would not have purchased the Products had they known the Products contained many grams of added sugar in the form of allulose. Further, Plaintiff and Class Members paid a price premium for the Products because of the Sugar Representation. Therefore, Plaintiff and Class Members suffered an injury in fact and lost money as a result of Defendant's false and misleading Sugar Representation.

## CLASS ALLEGATIONS

48. ***Class Definition:*** Plaintiff brings this action on behalf of all people in the following classes and subclasses (collectively referred to as "Class Members"):

a. ***Nationwide Class:*** all people in the United States who purchased the Products for personal or household use.

b. ***Multi-State Consumer Protection Class:*** all persons who, in the State of Illinois or any state with similar laws,[8] purchased the Products, within the applicable statute of limitations, until the date notice is disseminated.

---

[8] While discovery may alter the following, Plaintiff asserts that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: Arkansas (Ark. Code § 4-88-101, *et seq.*); Colorado (Colo. Rev. Stat. § 6-1-101, *et seq.*); Connecticut (Conn. Gen. Stat. § 42-110, *et seq.*); Delaware (Del. Code tit. 6, § 2511, *et seq.*); District of Columbia (D.C. Code § 28-3901, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*); Idaho (Idaho Code § 48-601, *et seq.*); Illinois (815 ILCS § 505/1, *et seq.*); Maine (Me. Rev. Stat. tit. 5 § 205-A, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); Montana (Mont. Code § 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. § 59-1601, *et seq.*); Nevada (Nev. Rev. Stat. § 598.0915, *et seq.*); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New Mexico (N.M. Stat. § 57-

c. ***Illinois Subclass:*** all people who purchased the Products in the State of Illinois for personal or household use during the last three years.

49. Each of the above class definitions is a placeholder that "may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

50. Excluded from the putative classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family. Also excluded are any claims for personal injury.

51. ***Numerosity.*** Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of consumers. The precise number of Class Members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant, its retailers, its agents, or other means.

---

12-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349, *et seq.*); North Dakota (N.D. Cent. Code § 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon (Or. Rev. Stat. § 646.605, *et seq.*); Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Dakota (S.D. Code Laws § 37-24-1, *et seq.*); Texas (Tex. Bus. & Com. Code § 17.41, *et seq.*); Virginia (VA Code § 59.1-196, *et seq.*); Vermont (Vt. Stat. tit. 9, § 2451, *et seq.*); Washington (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia (W. Va. Code § 46A-6-101, *et seq.*); and Wisconsin (Wis. Stat. § 100.18, *et seq.*). *See Mullins v. Direct Digital, LLC*, No. 13-cv-1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014), *aff'd*, 795 F.3d 654 (7th Cir. 2015).

52. ***Commonality and Predominance.*** Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

a. Whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

b. Whether allulose is a sugar;

c. Whether the Sugar Representation is false, misleading, and/or deceptive;

d. Whether Defendant's conduct in advertising and selling the Products amounted to deceptive or unfair business practices in violation of the ICFA;

e. Whether Plaintiff and the Class Members have sustained damage as a result of Defendant's deceptive conduct;

f. The proper measure of damages sustained by Plaintiff and the Class Members; and

g. Whether Defendant was unjustly enriched by its unlawful practices.

53. ***Typicality.*** Plaintiff's claims are typical of the claims of the Classes in that Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's sale of the Products using false and misleading labeling.

54. ***Adequacy.*** Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that are antagonistic to those of the Classes. Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

55. ***Superiority.*** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

56. Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and Members of the Classes and will likely retain the benefits of its wrongdoing.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS 505/1, *et seq.***
**(On Behalf of the Illinois Subclass)**

57. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

58. Plaintiff brings this cause of action individually and on behalf of the Illinois Subclass.

59. Section 2 of the ICFA declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices" in the conduct of any trade or commerce, including the use or employment of any deception, fraud, false pretense, false promise, or misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon it, "whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2. In construing Section 2, "consideration shall be given to the interpretations of the Federal Trade

Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." *Id.*

60. Section 2 of the ICFA also declares unlawful any practice described in Section 2 of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 ("UDTPA"), including representing that goods have "characteristics, ingredients, uses, benefits, or quantities that they do not have," 815 ILCS 510/2(a)(5); representing that goods "are of a particular standard, quality, or grade . . . if they are of another," 815 ILCS 510/2(a)(7); and engaging in "any other conduct which similarly creates a likelihood of confusion or misunderstanding," 815 ILCS 510/2(a)(12).

61. The ICFA "shall be liberally construed to effect the purposes thereof." 815 ILCS 505/11a.

62. Plaintiff and Illinois Subclass members are "consumers" within the meaning of 815 ILCS 505/1(e), because they purchased the Products for their own use or that of members of their households and not for resale.

63. Defendant is a "person" within the meaning of 815 ILCS 505/1(c). The Products are "merchandise" within the meaning of 815 ILCS 505/1(b). Defendant's advertising, offering for sale, sale, and distribution of the Products constitute "trade" and "commerce" within the meaning of 815 ILCS 505/1(f).

64. Defendant engaged in deceptive acts or practices in violation of Section 2 of the ICFA by representing on the front and back of every package that the Products contain "<1g SUGAR" and "NO SUGAR ADDED," when each Product contains at least eleven grams of the sugar allulose that Defendant adds during manufacturing, and by concealing, suppressing, and omitting the material fact that the Products contain added sugar in the form of allulose.

65. Defendant's conduct also constitutes deceptive trade practices under 815 ILCS 510/2(a)(5), (7), and (12), which Section 2 of the ICFA incorporates, because Defendant represented that the Products have characteristics, ingredients, and quantities that they do not have; represented that the Products are of a particular standard, quality, or grade when they are of another; and engaged in conduct that creates a likelihood of confusion or misunderstanding as to the sugar content of the Products.

66. Defendant's conduct was also unfair. It offends public policy as embodied in federal and Illinois food labeling laws, which prohibit false or misleading sugar content claims, *see* 21 U.S.C. § 343(a)(1), (r)(1)(A); 21 C.F.R. §§ 101.13, 101.60(c); 410 ILCS 620/11(a); it is immoral, unethical, oppressive, and unscrupulous, in that it exploits consumers' efforts to limit their sugar intake; and it causes substantial injury to consumers, who cannot reasonably avoid that injury because Defendant does not disclose the truth in any manner a reasonable consumer would understand.

67. The Sugar Representation and Defendant's omissions are material. They concern the very attribute—sugar content—that Defendant chose to feature on the front of every Product label and that reasonable consumers consider important in deciding whether to purchase candy.

68. Defendant intended that Plaintiff and Illinois Subclass members rely on the Sugar Representation, which is why Defendant placed it prominently on the principal display panel of every package and repeated it on the back panel and in Defendant's advertising.

69. Defendant's deceptive and unfair acts and practices occurred in the course of conduct involving trade or commerce. The circumstances relating to Plaintiff's and Illinois Subclass members' transactions occurred primarily and substantially in Illinois, where they viewed the Products' labeling and purchased the Products.

70. Plaintiff and Illinois Subclass members were actually deceived by the Sugar Representation. Although reliance is not an element of a claim under the ICFA, Plaintiff and Illinois Subclass members did rely on the Sugar Representation in purchasing the Products.

71. As a direct and proximate result of Defendant's violations, Plaintiff and Illinois Subclass members have suffered actual damage because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' sugar content; (b) they paid a price premium for the Products due to the Sugar Representation; and (c) the Products do not have the characteristics, ingredients, uses, benefits, or qualities as promised.

72. Defendant's violations were willful and knowing, and were committed in conscious disregard of the rights of Plaintiff and Illinois Subclass members.

73. Pursuant to 815 ILCS 505/10a, Plaintiff and Illinois Subclass members seek actual economic damages, punitive damages, injunctive relief, reasonable attorneys' fees and costs, and any other relief the Court deems proper.

## SECOND CAUSE OF ACTION
**Violation of State Consumer Protection Statutes**
**(On Behalf of Plaintiff and the Multi-State Consumer Protection Class)**

74. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

75. Plaintiff brings this claim individually and on behalf of the members of the proposed Multi-State Consumer Protection Class against Defendant.

76. Plaintiff and Class Members have been injured as a result of Defendant's violation of the state consumer protection statutes listed above in paragraph 48 and footnote 8, which also provide a basis for redress to Plaintiff and Class Members based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

77. Defendant's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the jurisdictions encompassing the Multi-State Consumer Protection Class.

78. Defendant violated the Multi-State Consumer Protection Class states' unfair and deceptive acts and practices laws by representing that the Products contain "<1g SUGAR" and "NO SUGAR ADDED" when in fact they contain the sugar allulose.

79. Defendant's misrepresentations were material to Plaintiff's and Class Members' decision to purchase the Products or pay a premium for the Products.

80. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

81. As a result of Defendant's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members paid a premium for the Products.

82. As a result of Defendant's violations, Defendant has been unjustly enriched.

83. Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

## THIRD CAUSE OF ACTION
**Fraud**
**(On Behalf of the Nationwide Class and Illinois Subclass)**

84. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

85. Plaintiff brings this cause of action individually and on behalf of the Class and Subclass members.

86. As discussed above, Defendant provided Plaintiff and Class Members with false or misleading material information about the Products, including but not limited to the Sugar Representation.

87. This misrepresentation was made with knowledge of its falsehood.

88. The misrepresentation made by Defendant, upon which Plaintiff and Class Members reasonably and justifiably relied, was intended to induce, and actually induced, Plaintiff and Class Members to purchase the Products.

89. The fraudulent actions of Defendant caused damage to Plaintiff and Class Members, who are entitled to damages and other legal and equitable relief as a result.

## FOURTH CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of the Nationwide Class and Illinois Subclass)**

90. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

91. Plaintiff brings this cause of action individually and on behalf of the Class and Subclass members.

92. To the extent required, Plaintiff asserts this cause of action in the alternative to Plaintiff's legal claims, as permitted by Fed. R. Civ. P. 8(d).

93. Defendant, through the Sugar Representation and its other misleading representations and omissions, enticed Plaintiff and Class Members to purchase the Products.

94. Plaintiff and Class Members conferred a benefit on Defendant by purchasing the Products.

95. By its wrongful acts, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members.

96. Defendant benefitted financially from the revenues and other compensation tied to the sale of the Products, which was unjust in light of Defendant's wrongful conduct.

97. Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiff and Class Members as the result of its deceptive marketing and advertising practices.

98. Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and Class Members is unjust and inequitable, Plaintiff seeks restitution from, and an order from the Court disgorging, all profits, benefits, and other compensation obtained by Defendant due to its wrongful conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed classes, prays for the following relief:

A. Certification of the proposed classes;

B. Appointment of Plaintiff as representative of the classes;

C. Appointment of undersigned counsel as counsel for the classes;

D. A declaration that Defendant's actions complained of herein violated the statutes referenced herein;

E. For an order finding in favor of Plaintiff and Class Members on all counts asserted herein;

F. For an award of injunctive or other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including, *inter alia*, an order prohibiting Defendant from engaging in the unlawful acts described above;

G. For actual, compensatory, statutory, nominal, and/or punitive damages in amounts to be determined by the Court and/or jury;

H. For prejudgment interest on all amounts awarded;

I. For an order of restitution and all other forms of equitable monetary relief;

J. For an order awarding Plaintiff and Class Members their reasonable attorneys' fees, expenses, and costs of suit; and

K. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**JURY TRIAL DEMANDED**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all claims so triable.

Date: October 7, 2026

**KAMBERLAW, LLC**
By: */s/ Frederick J. Klorczyk III*
Frederick J. Klorczyk III*
305 Broadway, Suite 713
New York, NY 10007
Telephone: (646) 964-9604
Facsimile: (212) 202-6364
E-Mail: fklorczyk@kamberlaw.com

**SMITH KRIVOSHEY, PC**
Brittany S. Scott*
28 Geary Street, Suite 650, No. 1507
San Francisco, CA 94108
Telephone: (415) 839-7077
Facsimile: (888) 410-0415
E-Mail: Brittany@skclassactions.com

*Attorneys for Plaintiff and the Proposed Classes*

*Generally Admitted